IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES H. HUNTER,<br>PLAINTIFF<br><br>v.<br><br>(1) DEUTSCHE LUFTHANSA AG,<br><br>(2) GLOBAL DEFENSE TECHNOLOGY & SYSTEMS, INC.,<br><br>(3) GLOBAL STRATEGIES GROUP (UNITED KINGDOM) LIMITED,<br><br>(4) GLOBAL STRATEGIES GROUP HOLDING, S.A., A LUXEMBOURG CORPORATION,<br><br>(5) ETIHAD AIRWAYS P.J.S.C.,<br><br>DEFENDANTS | Civ. Action No. 09-3166(RJD)\(JMA)<br><br>**Declaration of Edward Robert Newitt** |

I, Edward Robert Newitt submit this declaration pursuant to 28 U.S.C. § 1746.

**Background**

1. I am a lawyer duly admitted as a solicitor of the Supreme Court of England and Wales, an enrolled Member of the Law Society of England and Wales, holding UK Passport Number 761286076, and currently a partner of Holman Fenwick Willan Middle East LLP of Barclays Building, Emaar Square, P.O. Box 53934, Sheikh Zayed Road, Dubai, United Arab Emirates, an English law firm licensed to act as legal consultants in the Emirate of Dubai.

2. I qualified as a solicitor in 1989 and have been engaged as a lawyer and solicitor since then. I moved to Dubai in 1996 to open the Dubai office for Hill Taylor Dickinson, the staff and business of that office being transferred to Holman Fenwick Willan in 2006. I confirm that I do not have rights of audience before the local courts, but regularly advise and give opinions on the laws of Dubai and the UAE. I have always worked as a litigator, often involved in multi-jurisdictional disputes and both myself and the firm are recognised in the main legal directories as top ranking in our areas of speciality, inter alia dispute resolution.

3. I make this affidavit on the basis of having reviewed the affidavit of Nicholas White of Trowers & Hamlins dated 3 March 2010, and First Amended Complaint by the Plaintiff in Civil Action no. 09-3166 (RJD)\(JMA).

4. I note at page 60 of the Complaint, (page 15 of the Independent Contractor Services Agreement ("ICSA") dated 23 June 2008), there is reference to a "Governing law: Arbitration" clause at clause 20. For ease of reference I set this out in full:

"20. *Governing Law; Arbitration*

20.1 *The Services Agreement is governed by and shall be constructed in accordance with the laws of Dubai and the United Arab Emirates as applied in Dubai.*

20.2 *Any dispute arising out of or in connection with this Service Agreement, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration under the Rules of the London Court of International Arbitration, which rules are deemed to be incorporated by reference into this Clause. The number of arbitrators shall be one. The seat, or legal place of the arbitration shall be London, England. The language to be used in the arbitral proceedings shall be English. The governing law of the Services Agreement shall be the substantive law of Dubai and the United Arab Emirates as applied in Dubai. Arbitration does not preclude the Company from obtaining interim relief (including injunctive relief) against the Operative from any court of competent jurisdiction.*

20.3 *The Services Agreement is made only in the English language. If there is any conflict in meaning between the English language version of the agreement and any version or translation of this agreement in any other language, the English language shall prevail."*

5. I have been asked to opine on the application and enforceability of the arbitration provisions of this clause.

6. In my view, clause 20.2 is a broadly worded standard arbitration clause which the Dubai courts would consider covers any dispute arising out of or in connection with the relationship between the Plaintiff and Global Strategies Group (Middle East) FZE ("GAE") since the ICSA was intended to govern the entire relationship between GAE and the Plaintiff. This broad application is in my view supported by the fact that jurisdiction of the arbitration tribunal has been extended to cover such issues as whether or not there is a contract.

7. In my experience the UAE courts are "pro-arbitration", and where there is an arbitration agreement, they will always defer to the intention to arbitrate a matter rather than seize jurisdiction over the dispute. This can be contrasted with the situation where the UAE courts will routinely ignore foreign law and court jurisdiction clauses in a contract and seize jurisdiction of a claim brought

before them by applying the standard jurisdictional rules, e.g. the claimant resides in the UAE. However, it is nevertheless possible to commence proceedings before the local courts even if there is a contract referring to arbitration (whether foreign or local) and have the matter determined before the local courts, but only if the Defendant does not notify the court at the first hearing of the matter that there is an arbitration clause and the Defendant requests that the matter be referred to arbitration. In those circumstances, the court will, in my experience adhere to the principle that since there is an arbitration clause and it has been invoked, the court process will be stayed or withdrawn in favour of the arbitral tribunal specified in the contract.

8. I have been asked of what attitude the local UAE courts would take if faced with a similar situation as in the instant case where the contracting entity has not been joined and other related entities have been made party to the proceedings. In my view, the UAE courts would consider that the relationship between the Global Group entities and the Plaintiff was founded on the ICSA with GAE, the wholly owned UAE subsidiary, and that the claims arose during the course of this contract, or as a result of a breach thereof. The joining of the other entities would be regarded as a ruse to avoid the provisions of the contract and the arbitration clause and if the sued Global Group entities were to plead the existence of the contract and arbitration clause at the first hearing, I consider that the UAE courts would in all likelihood refer the matter to arbitration.

9. If arbitration proceedings are already afoot and a party seeks to commence proceedings before the UAE courts, unless of course the proceedings are to enforce a foreign arbitration award, the UAE courts will not accept jurisdiction over that dispute.

10. The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") came into force in the UAE on 19 November 2006 (Federal Decree no.43 of 2006). The principles behind the Convention are reflected by the "pro-arbitration" policy adopted by the UAE courts, as illustrated in paragraphs 7 and 8 above. I hold the view that provided that all the requirements under the New York Convention are met, the UAE courts will recognise the foreign arbitration agreement and enforce an award from a Contracting State in order to comply with the international comity of the New York Convention.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed by Edward Robert Newitt this 25th day of March 2010

*[signature]*
-------------------------------------