UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JAMES H. HUNTER,

        Plaintiff,

  - against -

(1) DEUTSCHE LUFTHANSA AG,

(2) GLOBAL DEFENSE & TECHNOLOGY SYSTEMS, INC.,

(3) GLOBAL STRATEGIES GROUP (UNITED KINGDOM) LIMITED, AN ENGLISH COMPANY,

(4) GLOBAL STRATEGIES GROUP HOLDING S.A., A LUXEMBOURG CORPORATION, and

(5) ETIHAD AIRWAYS P.J.S.C.

        Defendants.
------------------------------------------------------------x

No. 09-3166 (RJD)(MJA)

**DECLARATION OF Ali Al Aidarous, ESQ.**

I, Ali Al Aidarous, declare and state as follows:

1. I am an adult legally competent to execute this Declaration and I provide an expert opinion concerning this matter. I am a Managing Attorney and founding partner of Ali Al Aidarous International Legal Practice, which is located in, Suite 101, Zalfa Building, Garhoud, Dubai, UAE. I have extensive experience in UAE commercial laws and the practice of litigation in the UAE courts.

2. I submit this declaration upon the request of Andrew Harakas Esq. acting on behalf of Etihad Airways P.J.S.C. ("Etihad") who is the 5th Defendant in United States District Court Eastern District Court, Civil Action No: 09-3166 (RJD) MJA, commenced by James H. Hunter ("the Proceedings").

3. Attached to this declaration is a bundle of documents and laws that have been used to formulate the opinions I have expressed. I refer to various attachments contained in the bundle throughout this declaration.

4.  I consider that my qualifications and experience, as outlined in the attached profile (**Attachment 1**) are relevant to the issues of this case.

5.  In addition to the index of documents I have had regard to various laws and regulations of the UAE. A full list of the laws that I have referred to and relied upon appears at **Attachment 2**.

## Background Facts

6.  In preparation of this declaration, I have relied on the following factual assumptions provided to me by the counsel of Etihad, and my reading of the facts set forth in the Amended Complaint.

7.  James H. Hunter is the Plaintiff against five Defendants, which include Etihad.

8.  On 29 July 2008, Hunter traveled from Spokane, Washington to Frankfurt, Germany via Denver, Colorado on United Airlines. Hunter then was scheduled to fly from Frankfurt, Germany to Dubai, UAE on a Lufthansa flight. Thereafter, it is alleged that Hunter would travel to Bagdad on an Iraqi Airways flight.

9.  On 30 July 2008, the Lufthansa flight to Dubai, UAE was cancelled due to a strike.

10. As a result, Hunter was booked by Lufthansa onto Etihad Airways via flight EY02 that left Frankfurt on 30 July 2008 for Abu Dhabi, UAE.

11. It is alleged that Hunter would then be transported from Abu Dhabi to Dubai via road on a Lufthansa chartered shuttle. Hunter then planned to fly to Baghdad aboard an Iraqi Airways flight, which was his final destination.

12. Hunter was carrying firearms for which he did not have a UAE import permit or license.

13. Upon arrival to Abu Dhabi Airport, Hunter was detained and then charged for not having the required import license issued by UAE authorities for the firearms he was carrying. He was detained by UAE Police, subsequently convicted by the competent court in Abu Dhabi, and served a jail sentence.

## UAE Constitution and Federal Overview

14. The United Arab Emirates ("UAE") is a federation of seven Emirates ("the Federation") of which Dubai and Abu Dhabi are member Emirates. The UAE is governed by The Constitution of the United Arab Emirates ("the Constitution"). The provisional Constitution was signed on 18 July 1971. This was made final with some minor amendments by way of the Constitutional Amendment No.1 of 1996, which was signed

2

by the President of the UAE on December 2, 1996. A copy of the Constitution appears at **Attachment 3**.

15. Pursuant to the Constitution the federal government is empowered to exercise sovereignty in matters exclusively assigned to it in accordance with the Constitution (Article 2).

16. Article 3 states and provides that each individual Emirate shall exercise sovereignty over their own territories and territorial waters, in all matters which are not within the jurisdiction of the federal government as assigned in the Constitution.

17. Article 120 of the UAE Constitution provides that the Federation, referred by the constitution as the United Arab Emirates Federal independent country of Sovereignty, shall have exclusive legislative and executive jurisdiction in the matter listed in that Article. Relevant matters listed (translated) are inter alia:

> "...Protecting the Federation, security from threats inside or outside..."

> "Federal nationality, passports, residence and emigration"

18. Article 121 provides that without prejudice to the provisions of Article 120, the federal government has exclusive legislative jurisdiction in the matters detailed in that Article. Relevant matters contained in that Article include:

> ".....major legislation dealing with criminal law,..... civil and criminal procedure,.....importation of weapons and ammunition for uses other than in the armed forces and security forces of the Emirates, aviation matters that are beyond the executive jurisdiction of the Federation...."

19. Article 122 states that each Emirate shall have jurisdiction in all matters not assigned to the exclusive jurisdiction of the federal government in accordance with the provisions of Articles 120 and 121.

20. At this point it is important to distinguish between the powers in Article 120 and 121. Article 120 gives exclusive legislative as well as executive jurisdiction to the federal government for the matters listed in it. By exclusive we mean that the federal government must not only pass the law, but also take steps to implement it through a federal government department or body. In contrast Article 121 provides exclusive legislative powers for the matters listed, however implementation of those laws passed by the federal government can lie with a local Emirate which retains the executive jurisdiction. This is relevant to criminal matters as each Emirate has its own police force.

21. There are two distinct laws in the UAE: Federal and Local. Federal laws apply to the UAE as a whole. Local laws only apply to a particular Emirate. Federal laws dealing with matters exclusively reserved for the Federation, pursuant to Articles 120 and 121 of

|   |   |
|---|---|
|   | the Constitution, prevail over local laws. In the event of conflict, the Federal Supreme Court is competent to adjudicate (Article 151). |
| 22. | The reason for this outline is to provide an overview of the system before dealing with the various issues raised below. It is important to note while the matter of immigration is under the exclusive jurisdiction of the Federation in terms of both legislation and execution, hence legislation relating to immigration apply uniformly across the UAE and Federal Interior Ministry officers are responsible for enforcing these laws at both Dubai and Abu Dhabi Airports, the matter of import of firearms, although it falls within the federal legislative jurisdiction, is implemented by the local security authorities of each Emirate, notably Dubai Police and Abu Dhabi Police. |

### Whether Mr. Hunter required a visa to enter UAE (Dubai and Abu Dhabi) in July/August 2008?

|   |   |
|---|---|
| 23. | Pursuant to Federal Law 6 of 1973 the Immigration Law (**Attachment 4**) Hunter did require a valid UAE visa to enter the country. This law requires that all people visiting the UAE should obtain a visa. This is a Federal law that applies across all Emirates. |
| 24. | Ministerial Decision 13 of 1977 (**Attachment 5**) creates a UAE Immigration Department with responsibility for issuing visas, and controlling entry points. Article 2 of the Ministerial Decision 19 of 1973 (**Attachment 6**) makes the Abu Dhabi, and Dubai Airports entry points for the issuance of visas. |
| 25. | Although Hunter required a visa, a distinction needs to be made between nationalities that must pre apply for a visa and arrive in the UAE with a granted visa, from those countries whose citizens are exempted from pre-application of a visa prior to their arrival in the UAE. Ministerial Decision 360 of 1997 (**Attachment 7**), and UAE Cabinet Decision No. 207/23 for the year 2001 (**Attachment 8**) entitle citizens of various countries, including the USA, to obtain a visa upon their arrival in the UAE, i.e., they are exempted from pre-applying and obtaining a visa before their arrival at an entry point in UAE. This is to be contrasted with countries that are not exempt. In such situations the applicant would need to apply for a visa outside of the UAE and present that visa to the immigration officer upon arrival in the UAE. Practically speaking, visas for the nationals of exempted countries are usually granted unless there is some reason to deny the visa. |
| 26. | As the USA is one of the countries whose citizens are exempted from the requirement of a obtaining a visa prior to arrival in the UAE, Hunter as a US citizen was entitled to this exemption. |
| 27. | Although there are provisions in the UAE for granting of transit visas at the airport, which are provided to foreigners who intend to continue their travels but are not able to do so, that allows them to stay in the country for a maximum of 96 hours from the date of issuance of the transit visa, but as Hunter was a US citizen with the entitlement to obtain a visit visa for a period of 30 days upon arrival at the point of entry in UAE, we do not |

consider this to be relevant. Assuming Hunter required a transit visa, he would still be subject to UAE laws and Customs and police control.

28. Since immigration is a Federal responsibility, there would be no difference in the treatment of Hunter at either Abu Dhabi or Dubai airports (or any other airport in the UAE). The same visa procedures apply at all the entry points in UAE.

**Was Mr. Hunter required, under UAE law, to obtain a permit for the weapons for transportation terminating in the UAE, and whether government approval was required for weapons if he was transiting the UAE either through Dubai or Abu Dhabi?**

29. Pursuant to Article 6 of Federal Immigration Law of 1971 (**Attachment 9**), all persons entering the UAE must present their passport and submit to the Security Authority at the entrance point. Local Emirates' Police forces have offices at the airports for the purposes of security and law enforcement.

30. This means that Hunter upon arrival was subject to the usual security procedures at Abu Dhabi. Similar security procedures would have applied at all UAE airports including Dubai Air Port. The only difference would be that security at Abu Dhabi Airport is the responsibility of Abu Dhabi police force, whilst security at Dubai Airport is the responsibility of Dubai police.

31. Pursuant to Federal Law 11 of 1976 (**Attachment 10**) Concerning Fire Weapons, Ammunitions and Explosives, no person can import weapons into the UAE without a license (Article 4 read with Article 2). Any failure to do so is an offence. Assuming Hunter did not have a license to import weapons, as defined in the said law, then he would be charged for the offense under this law.

32. Article 47 of this law makes clear the Federal judiciary is responsible for dealing with violations of this law. As Hunter was charged with a Federal offence he would have been treated in the same way in either Abu Dhabi or Dubai for these offences, as the law is applicable all over the UAE.

33. We assume that in this case Hunter's original transportation was supposed to terminate in Dubai, and that his baggage was not checked through to Iraq. Thus, upon arrival in Dubai (or Abu Dhabi) Hunter would have been required to go thru immigration and collect his baggage, and be subject to immigration and Customs control.

34. In May 2009 the Federal Law 11 of 1976 was replaced by Federal Law 3 of 2009 concerning Weapons, Ammunition and Explosives which also imposes obligations with regard to the import and export of guns, and the need for a license to do so (**Attachment 11**).

**Mr. Hunter's original itinerary showed that his transportation terminated in Abu Dhabi, and his baggage was not checked through to Iraq. Therefore, upon arrival in Abu Dhabi would Mr. Hunter have been required to go through immigration, collect his baggage and check in for his flight to Iraq? If so, would a weapons permit be required under UAE law?**

35. If Hunter's original itinerary showed that his transportation terminated in Abu Dhabi, then he would definitely need to go through immigration at Abu Dhabi Airport and collect his baggage. Had Hunter's transportation terminated in Dubai, then he would still need to go through immigration at Dubai Airport and collect his baggage, before he could check in for his flight to Iraq, unless his itinerary showed that his transportation terminated in Iraq. In such a case, to the best of my knowledge he normally would not have had to go through immigration at Dubai Airport, and collect his baggage.

**If Mr. Hunter had managed to check his baggage thru to Iraq, would he have been required to obtain UAE government approval for the transiting of weapons thru the UAE?**

36. Notwithstanding my statement in paragraph 35 above, had Hunter arrived in Dubai with baggage checked directly to Iraq, although routinely he would not pass the Customs control, he would have been liable to be charged and convicted for importing firearms without an import license if his baggage had been inspected by the security of Dubai Airport.

37. Assuming Hunter had his baggage checked through to Iraq, our opinion does not change and the need for a license was still required. Both Law 3 of 2009 and Law 11 of 1976 talk about weapons being brought to the UAE. No distinction is made between persons transiting or not.

38. Under Federal Law No. 3 of 1987 on the Penal Code for UAE (**Attachment 12**) (the "Penal Code"), a passenger entering the UAE (even if only to transit out) is subject to UAE laws and criminal sanctions for breach of those laws (Articles 3 and 16). A common analogy would be drug trafficking. Simply because a person is transiting through Dubai or Abu Dhabi Airport and is in the airside of the Airport does not mean they are exempt from UAE laws. Drug traffickers are regularly prosecuted for attempting to transit through UAE Airports with drugs. All of the Federal laws dealt with above make clear that the laws apply to all of the UAE, which includes airports.

**Irrespective of whether Mr. Hunter had been transported to Dubai or Abu Dhabi, would he have been in violation of UAE law for transporting the weapons without a permit, and would he be subject to arrest and seizure of weapons by UAE authorities?**

39. If Hunter was proven to have imported weapons without a license, he would be in violation of UAE laws for the reasons outlined above, and would be subject to arrest and prosecution pursuant to relevant UAE laws.

40. Furthermore, according to Article 16 of the Penal Code, a crime is considered to have been committed in UAE if it is committed within the territory of the state which includes

6

its lands, and any place under its sovereignty including territorial waters, and airspace above them, and according to my reading of this Article airports including its transit areas are not exempt. It is worth mentioning that according to Article 3 of the Penal Code the above provision, which is part of Book I of the Penal Code, is applicable to any conduct criminalized under any law.

41. Article 36 of Federal Law 11 of 1976 Concerning Fire Weapons, Ammunitions and Explosives, allows for the seizure of weapons.

**Whether UAE Law recognizes the following causes of action:**

- action for false imprisonment and/or arrest;
- action for intentional infliction of emotional distress; and
- action for punitive damages

42. According to Article 7 of the UAE Criminal Procedure Code No. 35 of 1992 (**Attachment 13**) the public prosecutor is the only competent authority to pursue prosecutions, and according to Article 49 of the said law, law enforcement officers may arrest a person within certain legal parameters, and offenses relating to firearms are among the offences for which arrest is permitted. Therefore, according to UAE law if any actions for false imprisonment and/or arrest are brought, these should be against the arresting and prosecuting authority in Abu Dhabi, namely Abu Dhabi Police and/or Public Prosecution if valid grounds exist. Hence, no such case can be validly brought against Etihad.

43. Notwithstanding the above paragraph, Article 275 and 276 the Penal Code recognize an offense of "false notification" (that can equate to the offense of false prosecution in certain legal systems). However, this offense requires falsely and with malicious intention notifying judicial authorities of an offense that did not occur, which was not the case with Etihad, on the assumption that Etihad was not the party that reported the illegal import of weapons by Hunter in the first place, and the offense was discovered by the Abu Dhabi Airport authorities.

44. In general, UAE law allows damages for emotional distress under Article 293 of the UAE Civil Code, Federal Law No. 5 of 1985 (**Attachment 14**) (the "Civil Code") but there is no separate cause of action for the intentional infliction of such distress. In all cases the award of such damages remains at the sole discretion of the court. Again, such damages would only be recoverable as part of any claim against the relevant governmental authorities, and not Etihad.

45. The concept of punitive damages in the sense of increased damages due to aggravating circumstances common in certain legal systems is not recognized under UAE law. According to Article 292 of the Civil Code, damages shall be assessed on the basis of the amount of harm suffered by the aggrieved party, together with the loss of profit provided that the harm is the natural result of the act, irrespective of whether the harmful act was intentional or not, and such intention can be taken into consideration in imposing the

penal sanction such as imprisonment or severe fine paid to the government, and not to the aggrieved party.

46.    In brief, damages awards are to compensate the aggrieved party and not to enrich him.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 3, 2010.

_____
Ali Al Aidarous