UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x
JAMES H. HUNTER,

                    Plaintiff,

        - against -

DEUTSCHE LUFTHANSA AG, ETIHAD AIRWAYS
P.J.S.C., and UNITED AIRLINES INC.,

                    Defendants.
------------------------------------------------------- x
ETIHAD AIRWAYS P.J.S.C,

                    Third-Party Plaintiff,

        - against -

UNITED AIRLINES, INC.,

                  Third-Party Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**

09 CV 3166 (RJD) (JMA)

DEARIE, District Judge.

      Plaintiff was traveling to a security job in Baghdad with firearms in his checked baggage when a flight cancellation forced him to reroute mid-journey. He was imprisoned in Abu Dhabi for weapons trafficking after airline representatives led him to believe that his firearms would not pose a problem with authorities. By Memorandum & Order dated March 28, 2012, this Court dismissed all of plaintiff's federal and state law claims against Etihad Airways P.J.S.C. ("Etihad") and Deutsche Lufthansa AG ("Lufthansa"), except for the state law negligence cause of action.

      Plaintiff now amends his complaint to add claims against United Airlines, with whom he originally booked his flights. He argues that United was negligent and breached its contract of carriage by failing to document the presence of his firearms in his passenger name record, the

electronic means of notifying other carriers. Etihad had previously filed a third-party complaint against United seeking indemnity or contribution.

United moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons that follow, we dismiss plaintiff's complaint against United in its entirety, but permit Etihad's contribution claim to go forward.

### I. BACKGROUND

#### A. Facts and Procedural History

The following facts are taken from the allegations of the complaint and are assumed to be true for the purposes of this motion. Plaintiff, a United States Air Force veteran and former Aviation Security Inspector with the Department of Homeland Security, was traveling on business from his residence in Spokane, Washington to Baghdad, Iraq. He had accepted a job as a security consultant for a Middle Eastern company and was transporting firearms needed for work. Plaintiff's travel arrangements, which he made through United Airlines, included several domestic and international flights. Plaintiff flew from Spokane, Washington, through Denver, Colorado, to Washington Dulles Airport in Virginia. From there, plaintiff was booked on a United flight to Frankfurt, a Lufthansa flight from Frankfurt to Dubai, and an Iraq Airlines flight from Dubai to Baghdad. Prior to traveling, plaintiff contacted each airline "to confirm the status of checking his firearms as baggage and transporting his firearms." Compl. ¶ 26. He also made a trip to the Spokane, Washington airport and spoke to United representatives "about the propriety of taking his firearms with him to Iraq on his reserved itinerary." Compl. ¶ 27. According to plaintiff, United representatives explained that "so long as his arrival at his destination with his firearms was approved and lawful," United and the other carriers would be "pleased to carry his firearms on the rest of his journey, provided he complied with all TSA and

FAA regulations." Compl. ¶ 28. Representatives of Lufthansa told him the same when he contacted them by phone. Id.

Plaintiff's flight plans were derailed in Frankfurt when his connecting flight to Dubai was cancelled. With assurances from Lufthansa and Etihad representatives that the weapons would pose no problems, plaintiff decided to take an Etihad Airlines flight to Abu Dhabi, and then a Lufthansa chartered "shuttle" to Dubai to catch his connecting flight to Baghdad. Compl. ¶ 34-38. Unbeknownst to him, this route involved officially entering the United Arab Emirates ("UAE"), where he was arrested upon arrival, eventually convicted of gun trafficking, and imprisoned for over one month under harsh conditions. Compl. ¶ 43, 50, 52-59.

In July 2009, plaintiff commenced an action against Lufthansa Airlines and Etihad Airlines, bringing an assortment of claims including state law negligence, breach of contract, false arrest and false imprisonment, intentional infliction of emotional distress, and a federal discrimination claim. On March 28, 2012, we granted defendants' motion to dismiss all of the claims except for the negligence cause of action. Hunter v. Deutsche Lufthansa AG, 863 F.Supp.2d 190 (E.D.N.Y. 2012).

### B. Allegations Against United

On August 8, 2011, Etihad Airlines filed a third party complaint against United Airlines, seeking indemnification or contribution. Etihad's discovery revealed that United failed to document plaintiff's weapons when he checked in at the airport in Spokane on July 29, 2008. Specifically, after TSA agents inspected plaintiff's firearms, tagged his checked baggage with a "red tag," and informed United of a satisfactory inspection, United recorded the presence of the weapons in their own computerized system, but did not document it in plaintiff's Passenger Name Record ("PNR"). Compl. ¶ 30, 32, 92; Amended Third-Party Complaint ¶ 16. As a

result, neither Lufthansa nor Etihad were made aware of the weapons in plaintiff's checked baggage at the outset of his trip. Compl. ¶ 32. Plaintiff alleges that proper documentation of weapons requires a special service request ("SSR") coding the firearms as "WEAP," which would have rendered plaintiff's ticket "subject to acceptance" by each of the carriers before a seat would be confirmed. Compl. ¶ 32.

On January 18, 2012, plaintiff filed an amended complaint adding United Airlines as a defendant. In light of this Court's earlier decision with respect to the other airline defendants, plaintiff now asserts only claims for negligence and breach of contract against United. Plaintiff's Memorandum in Opposition to United Airlines' Motion to Dismiss ("Plaintiff's Mem.") at 8.

## II. DISCUSSION

### A. Motion to Dismiss Standard

When a court evaluates a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), it must "accept all well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff." Chapman v. N.Y. State Div. for Youth, 546 F.3d 230, 235 (2d Cir. 2008). "[A] complaint is insufficient as a matter of law unless it pleads specific facts that 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111, 188 (2d Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)) (modification in original). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 58-59 (2d Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1950). "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to

4

the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'"[1] Leonard F. v. Israel Discount Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999) (quoting Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir.1991)).

**B. Plaintiff's Claims**

*1. Negligence*

First we address the issue of the timeliness of plaintiff's negligence claim against United. Under New York law, which applies in this diversity case, plaintiff's negligence claim is governed by a three-year statute of limitations. See N.Y. Civ. Prac. L. & R. ("CPLR") §§ 214(4), 214-a, 214-b, 214-c, 215 (McKinney 1990). CPLR § 203 states that "the time within which an action must be commenced . . . shall be computed from the time the cause of action accrued to the time the claims [are] interposed." As plaintiff's claim was not filed until January 18, 2012, it appears that it is time-barred.

Plaintiff makes two arguments for pushing out the accrual date from July 30, 2008, the date of his arrest and detention in Abu Dhabi. See Plaintiff's Mem. at 11. First, he maintains that his negligence claim cannot accrue until he is aware of the full of extent of his injuries, pointing to medical records and the diagnosis of his physical and psychological injuries after he returned home. Second, plaintiff argues that it was not until Etihad turned over documents that he became aware of United's negligence. Both of these arguments focus on plaintiff's "discovery" of his injuries and plainly contradict New York law.

In New York, a tort claim accrues when plaintiff can allege all of the legal elements that would allow her to seek redress for her injuries. Kronos, Inc. v. AVX Corp., 612 N.E.2d 289,

---

[1] In supporting and opposing the various motions to dismiss, the parties—most notably plaintiff—submitted voluminous materials beyond the pleadings, including affidavits, declarations, exhibits and statements of domestic and foreign law. In keeping within the parameters of Rule 12(b)(6), the Court considered these materials only to the extent allowable.

5

293 (1993). In cases of negligence, the statute of limitations "begins to run when the injury first occurs," regardless of whether the injured party is ignorant of defendant's wrongful act or the resulting injury. Iacobelli Constr., Inc. v. County of Monroe, 32 F.3d 19, 27 (2d Cir. 1994); Snyder v. Town Insulation, Inc., 615 N.E.2d 999, 1000 (1993); see also Schmidt v. Merchants Despatch Transp. Co., 270 N.Y. 287, 300 (1936).

United erred by failing to document plaintiff's weapons on July 29, 2008. However, plaintiff's cause of action did not accrue until that act actually injured plaintiff on July 30, 2008, when plaintiff was arrested and detained in Abu Dhabi. The other injuries plaintiff cites in the complaint—including termination from his job on August 6, 2008 for failing to arrive in Baghdad as scheduled, and the physical and psychological injuries he endured in prison—are consequences of his detention. Compl.¶ 77, 81. These subsequent injuries do not restart the clock for statute of limitations purposes. See Schmidt, 270 N.Y. at 300 ("No new cause of action accrues when . . . consequential damages arise."); Iacobelli Constr. Inc., 32 F.3d at 26 (affirming the district court's finding that the triggering event for purposes of the statute of limitations is clearly the time of *first* injury, despite the fact that "the repercussions of the alleged negligent conduct and injuries extended beyond . . ."). Even if United's allegedly faulty documentation contributed to plaintiff's injury, "it was a single act of negligence from which all potential damages arose, and did not constitute a continuous wrong." Jensen v. City of New York, 734 N.Y.S.2d 88, 89 (App.Div.2001); see also Eastern States Health & Welfare Fund v. Philip Morris, Inc., 729 N.Y.S.2d 240 (N.Y. Sup. 2000) (quoting Coughlin v. International Business Machines Corp., 225 A.D. 256, 260 (3d Dept. 1996) ("It is a settled principle that once a compensable injury has occurred, the time within which an action may be commenced may not

be extended merely by the aggravation, or exacerbation, of that injury by continued contact . . ."). Accordingly, plaintiff's negligence claim accrued on July 30, 2008.

Factoring in the three-year statute of limitations, the next question is whether the claims were interposed by July 30, 2011. Plaintiff's argument that his claim relates back to the filing of Etihad's third party complaint on August 8, 2011 is irrelevant for our purposes. It would still be time-barred under the three-year limitations period. Plaintiff argues alternatively that the claim relates back to the original complaint against Lufthansa and Etihad. We disagree.

"Federal courts choosing between federal and state relation back doctrines should pick the more forgiving principle of relating back." Fisher v. County of Nassau, 2011 WL 4899920, at *4 (E.D.N.Y. 2011) (Seybert, J.) (quoting Wilson v. City of New York, 2006 WL 2528468, at *2 (S.D.N.Y. 2006) (internal quotations omitted). Under the federal rules, an amendment adding a defendant relates back to timely complaint when the claim against the new party arises out of the same conduct or occurrence set forth in the original pleading and, within the time for serving the original pleading, the new party both (i) received noticed of the action such that it would not be prejudiced in defending it, and (ii) "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." See Fed.R.Civ.P.15(c)(1)(C).

Although plaintiff suggests that United may have had knowledge of the case at some point before they were sued more than three years after the incident, the complaint does not allege that United had notice within 120-days of the filing of the original complaint. See Fed. R. Civ. P. 4 (m) (providing that the summons and complaint must be served within 120 days from the filing of the original complaint); see also Amaya v. Garden City Irrigation, Inc., 645 F. Supp.2d 116, 122 (E.D.N.Y. 2009) (Block, J.) (finding that Rule 15(c) does not permit plaintiff's

7

claims to relate back where there is "no suggestion that [the party to be added] knew about the lawsuit" within the 120-day period).

Furthermore, plaintiff has not alleged that United knew or should have known that an action would have been brought against it, but for a mistake concerning the proper party's identity. Instead, plaintiff relies on the fact that he did not timely learn of information demonstrating United's liability. However, the Supreme Court clarified that "relation back under Rule 15(c)(1)(C) depends on what *the party to be added* knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading." Krupsky v. Costa Crociere S.P.A., 130 S.Ct. 2485 (2010) (emphasis added).

The allegations in the original complaint premised liability solely on plaintiff's interaction with Lufthansa and Etihad representatives in the Frankfurt airport. Plaintiff's decision to sue those airlines was not a mistake, nor was it based on any misimpression on plaintiff's part.[2] On that basis, even with timely notice of the original complaint, it is unlikely that United would have considered plaintiff's failure to name them a "mistake" under federal law. For the forgoing reasons, plaintiff's amended complaint against United does not relate back to the original complaint under Rule 15.

Turning to Federal Rule 15(c)(1)(A), we consider New York's relation back doctrine, which is governed by CPLR § 203(c). See Fed. R. Civ. P. 15(c)(1)(A) (permitting an amendment to a pleading to relate back to the original pleading where "the law that provides the applicable statute of limitations allows relation back"). Under the CPLR, it is plaintiff's burden

---

[2] Although the Supreme Court's decision in *Krupsky* suggests that the federal doctrine of mistake may extend beyond "mistake of identity," which is not relevant here, we do not think the dicta of that case is applicable under these facts because United's role was never confused with that of the other airlines. Krupsky, 130 S.Ct. at 2494 ("[A] plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may *mistakenly* choose to sue a different defendant based on that misimpression") (emphasis added). In contrast, plaintiff's decision to sue Lufthansa and Etihad was clear and there are not allegations that it was the product of any confusion or misimpression.

8

to establish that "(1) both claims [arise] out of the same conduct, transaction or occurrence, (2) the new defendant is united in interest with the original defendant, and (3) the new defendant knew or should have known that, but for a mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him or it as well." Buran v. Coupal, 87 N.Y.2d 173, 177 (1995); see also New York CPLR § 203(c). While it is undisputed by the parties that the claims against United and the other airlines arise out of the same conduct, transaction or occurrence, plaintiff's claim fails because he cannot allege unity of interest or mistake.

Unity of interest is a question of law to be determined from an examination of the nature of plaintiff's claim and the "jural relationship" existing between the parties. Connell v. Hayden, 443 N.Y.S. 2d 383, 393 (2d Dep't 1981). A jural relationship means that "because of some legal relationship between the defendants they necessarily have the same defenses to the plaintiff's claim," and will therefore "stand or fall together." Amaya, 645 F. Supp.2d at 122 (quoting Connell, 443 N.Y.S.2d at 393). The classic example is vicarious liability between employer and employee or a corporation and its agent. Id. No such relationship exists between United and the other defendant airlines in this case. The parties are separate corporate entities and competitors within the industry. See Fisher v. APP Pharmaceuticals, LLC, 783 F.Supp.2d 424, 430 (S.D.N.Y. 2011) (finding that three corporations that "separately manufacture, market, distribute and sell" the same drug are not united in interest with respect to their liability for failure to warn of the drug's side effects).

We are not persuaded by plaintiff's reliance on the code-sharing agreement between United and Lufthansa. "A code sharing agreement is simply 'an arrangement whereby a carrier's designator code is used to identify a flight operated by another carrier.'" Shirobokova v. CSA

Czech Airlines, Inc., 376 F.Supp.2d 439, 443 (S.D.N.Y. 2005) (quoting 12 C.F.R. § 257(c)(3)). Plaintiff has not offered, nor have we found, any legal precedent supporting the argument that this relationship creates "unity of interest" for any cause of action, much less a negligence claim. Even if code-sharing resembled an "agency" relationship in some circumstances, plaintiff was well aware that he was dealing with Lufthansa and not United in Frankfurt. His flight out of Frankfurt was on Lufthansa, and he dealt directly with their airline representatives in changing his plans. Any code-sharing agreement is inconsequential for the purposes of assessing tort liability in this case.

Furthermore, United has distinctly different defenses to plaintiff's negligence claim. See Connell, 443 N.Y.S. at 394 (noting that joint tort-feasors are generally not united in interest unless they are vicariously liable because they frequently have different defenses). Unlike Lufthansa, United delivered plaintiff to Frankfurt, as planned, without delay or disruption. More importantly, United did not assist plaintiff with his decision to significantly alter his travel plans in Frankfurt. The distinct nature of each airline's involvement in this case precludes a finding that they are united in interest for the purposes of plaintiff's negligence claim.

We also find that plaintiff's decision to omit United from the original action is not a "mistake" that satisfies the New York "relation back" standard. Plaintiff argues that because he did not act in bad faith "to gain some advantage over" United, this prong of the test is satisfied. Plaintiff Mem. at 14. We disagree. Plaintiff must show that "the new defendant *knew or should have known* that, but for a mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him or it as well." See CPLR § 203(c)(3) (emphasis added). Here, plaintiff has not established that United "knew or should have known" of plaintiff's error.

Nor is plaintiff's purported lack of knowledge of United's liability a "mistake" of identity contemplated by the CPLR.

Notice to the defendant within the limitations period is the "linchpin" of the relation back doctrine. Buran , 87 N.Y2d at 180 (1995) (quoting Schiavone v. Fortune, 477 U.S. 21, 31 (1986). Addressing the doctrine of mistake, the Court of Appeals emphasized that the primary consideration is "whether the defendant could have reasonably concluded that the failure to sue within the limitation period meant that there was no intent to sue [ ] at all." Buran, 87 N.Y.2d at 180-81 (eliminating the requirement that plaintiff's mistake is considered "excusable").

It is unclear how United could have reached any other conclusion when there is no evidence that they knew or had reason to know of plaintiff's intention to sue them within the limitations period. Not only is United a distinct corporate entity and competitor of the other defendants, but it did not participate in the transactions between plaintiff and representatives of Lufthansa and Etihad in Frankfurt—the sole factual predicate for the original complaint against the other airlines.

Plaintiff offers the weakest of inferences, noting that counsel to Lufthansa referred to United's liability "at the very first hearing" in November of 2009. We are not convinced. This argument is a double-edged sword; if indeed United's potential liability was brought to plaintiff's attention within the limitations period, his failure to timely amend his complaint cannot be considered a mistake. Buran, 87 N.Y.2d at 181. ("When a plaintiff intentionally decides not to assert a claim against a party known to be potentially liable, there has been no mistake and the plaintiff should not be given a second opportunity to assert that claim after the limitations period expired") (emphasis added); Abdell v. City of New York, 2006 WL 2620927, at *6-8 (S.D.N.Y. 2012) (finding no mistake where plaintiff's counsel was privy to relevant

incriminating statements the day before the statute of limitations expired, but failed to request an extension of time to amend the complaint or file a motion for another four months). To the contrary, United would be justified in believing that plaintiff intentionally omitted them from the action. The original complaint was filed on July 23, 2009, more than two years before the statute of limitations expired. During that time, plaintiff certainly had access to all of his records, and likely had possession of his PNR far before the limitations period ran. Furthermore, plaintiff delayed filing an amended complaint against United for more than five months after Etihad filed its third party complaint against them.

Plaintiff relies on Walker v. Agro, 2000 WL 744536, at *4 (E.D.N.Y. 2000), for the proposition that lack of bad faith is sufficient under New York law. However, Walker is distinguishable for several reasons. First, the decision focused on the validity of the mistake and did not turn on the issue of defendant's knowledge. See id. at *5 (finding that the party to be added had adequate notice because his wholly owned corporation was timely served). Here, there is no relationship between defendants from which United's knowledge can be automatically imputed. Second, in Walker, plaintiff's "mistake" was failing to identify the agency relationship between the defendants giving rise to liability for the same wrongful acts. In contrast, this case is about "lack of knowledge" of facts giving rise to an independent theory of liability against United. Sloane v. Town of Greenburgh, 2005 WL 1837441, at *4 (S.D.N.Y. 2005) (distinguishing lack of knowledge from a mistake of fact or law). The allegations regarding improper documentation of plaintiff's weapons are factually distinct from the allegations in the original complaint. Permitting this type of discovery to qualify as a "mistake" is tantamount to extending the limitations period for the untimely discovery of liability—despite the fact that United was otherwise justified in believing that "the matter [had] been laid to rest as

far as [they] were concerned." Buran, 87 N.Y.2d at 180-81. We will not interpret Buran in a way that undermines the very policy upon which the Court of Appeals based its decision.

   *2. Breach of Contract*

Plaintiff also seeks relief for "breach of contract and breach of duty of common carrier." Compl. ¶ 89-98. We were unable to find a viable breach of contract claim in what appears to be a tangled contract and tort cause of action.

To establish a breach of contract under New York law, plaintiff must plead the (1) existence of a contract, (2) breached by the other party; and (3) damages suffered as a result of the breach. See Terwilliger v. Terwilliger, 206 F.3d 240, 245-46 (2d Cir. 2000). Plaintiff points to many "duties" owed to plaintiff based on "reasonableness" under the circumstances, but does not point to any specific contractual provisions in support of its claim. As we found with respect to the other airline defendants, the grounds for plaintiff's complaint more appropriately "sound[] in negligence, not contract," Breiner v. Stone, 122 F.3d 1055 (Table), 1997 WL 416942, *2 (2d Cir. July 25, 1997), and are merely duplicative of plaintiff's negligence action. See, e.g., Harleysville Worcester Ins. Co. v. Hurwitz, 2005 WL 774166, at *5 (S.D.N.Y. Apr. 6, 2005) (Carter, J.) (dismissing plaintiff's subrogation claim as duplicative of legal malpractice claim where "the claims arise from the same conduct—defendants' alleged acts of negligence—and involve[d] no distinct damages.").

Accordingly, United's motion to dismiss plaintiff's claim for "breach of contract and breach of duty of common carrier" is granted.

**C. Etihad's Claims**

On August 8, 2011, Etihad timely filed a third-party complaint against United seeking contribution and indemnity, which it amended on December 12, 2011. See Third Party Complaint; Amended Third-Party Complaint, ECF Docket # 103, 105. The complaint is based

on United's failure to (1) advise plaintiff of UAE license requirements; (2) document that plaintiff was carrying firearms in his checked baggage; or (3) otherwise take reasonable action to ensure that subsequent carriers would have proper notice of firearms being carried in plaintiff's checked baggage. For the reasons that follow, United's motion to dismiss Etihad's contribution claim is denied, and its motion to dismiss Etihad's indemnity claim is granted.

   *1. Contribution*

Under New York law, "two or more persons who are subject to liability for damages for the same personal injury . . . may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought." N.Y. CPLR § 1401. "A third party will be liable for contribution only if shown to have "had a part in causing or augmenting the injury for which contribution is sought." Nassau Roofing & Sheet Metal Co v. Facilities Dev. Corp., 71 N.Y.2d 599, 602-03 (N.Y. 1988). "A contribution claim can be made even when the contributor has no duty to the injured plaintiff . . . if there has been a breach of duty that runs from the contributor to the defendant who has been held liable." Racquet v. Braun, 681 N.E.2d 404, 407 (N.Y. 1997); Barbagallo v. Marcum, 2012 WL 1664238, at *10 (E.D.N.Y. 2012) (Weinstein, J).

To assess United's liability for plaintiff's damages, we turn to the elements of plaintiff's negligence claim. To make out a *prima facie* case for negligence under New York law, "three elements must be demonstrated: (1) the defendant owed the plaintiff a cognizable duty of care as a matter of law; (2) the defendant breached that duty; and (3) plaintiff suffered damage as a proximate result of that breach." Curley v. AMR Corp., 153 F.3d 5, 13 (2d Cir. 1998). It is undisputed that United, as a common carrier, owes its passengers a duty of reasonable care under the circumstances. Id. This means "care which a reasonably prudent carrier of passengers would

exercise under the circumstances, in keeping with the dangers and risks known to the carrier or which it should reasonably have anticipated." Id. (internal quotations omitted).

We are not persuaded by Etihad's contention that United is liable for failing to inform plaintiff of "UAE weapons law"—an argument that not even plaintiff considered a "good faith" basis for bringing a claim. See Plaintiff's Mem. at 14. United's statement in Washington put emphasis on the legality of plaintiff's entry into the country of its *final destination*. It is common sense that a foreign government would not distinguish between entering a country as a "final destination" and traveling through it, on the ground, for one's own purposes. Any confusion with respect to the legality of entering Abu Dhabi for the purposes of driving to Dubai was based on plaintiff's interactions with Lufthansa and Etihad representatives in Frankfurt.

Even if United was obligated to inform plaintiff of the risks of transporting weapons by way of a connecting flight in Dubai to Baghdad, such a breach was not the cause of plaintiff's injury in Abu Dhabi. Plaintiff never reached Dubai. United provided information based on plaintiff's original itinerary and never suggested that plaintiff could substantially alter his plans without a problem. Once plaintiff reached Frankfurt, he chose a new flight to a different emirate within the UAE, on a foreign airline, and opted to take ground transportation to Dubai requiring him to officially enter the UAE before reaching Baghdad. Even if plaintiff would have been likely to go through customs in Dubai under his original itinerary, as Etihad suggests, the changes to his itinerary in Frankfurt sealed his fate in Abu Dhabi.

On the other hand, United failed to document plaintiff's weapons in his PNR. The failure to do so was a deviation from standard airline procedure and created a "reasonable foreseeability of harm" to plaintiff. See Stanford v. Kuwait Airways Corp., 89 F.3d 117, 123 (2d Cir. 1996)

15

("In determining whether a duty exists, a court should examine: (1) the relationship between the parties; and (2) the reasonable foreseeability of harm to the person injured."). Id. at 125. As any traveler can attest, flights are inherently unpredictable and carry a significant risk of being disrupted. This was an international trip involving multiple legs and carriers, underscoring the importance of adhering to established procedures—particularly with respect to the transport of weapons. By failing to properly document the firearms in plaintiff's luggage, United created a foreseeable risk that dealings with other airlines and plans to reroute may be improperly handled, particularly with respect to spur of the moment decisions to accept new passengers onto a flight.

The next question is whether the complaint adequately alleges causation. Pointing to several product liability cases, United argues that it cannot be the proximate cause of plaintiff's injuries because plaintiff informed the other airlines directly of the weapons in his checked baggage.

As a general rule, the question of proximate cause is to be decided by the finder of fact. Stanford, 89 F.3d at 127 ("Although it is arguable whether [injury] was 'foreseeable[,]' . . . such matters are properly left to the trier of fact."); Derdiarian v. Felix Contracting Corp., 51 N.Y.2d 308, 314 (N.Y. 1980). "Only in the simplest cases where only one conclusion may be drawn from established facts may the question of legal cause be decided as a matter of law." Vumbaca v. Terminal One Group Ass'n L.P., 859 F.Supp.2d 343, 369 (E.D.N.Y. 2012) (Weinstein, J.). Further, "there is often more than one proximate cause in a negligence action." Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 15 (2d Cir. 2000) ("A proximate cause determination does not require a jury to identify the liable party as the sole cause of harm; it only asks that the identified cause be a substantial factor in bringing about the injury."). In that sense, this case is distinguishable from the failure to warn scenarios cited by United, where an adequate warning or

pre-existing awareness of danger shifts the risk to a product consumer and "obviates the failure to warn as a legal cause of an injury." Liriano v. Hobart Corp., 700 N.E.2d 303, 308 (1998).[3]

While plaintiff alleges that he informed representatives of the other airlines about the weapons in his luggage after he arrived in Frankfurt, this fact does not automatically relieve United from liability. At this stage, it is unclear how the documentation of weapons in a PNR— or lack thereof— impacts a subsequent carrier's dealings with customers. Such documentation may trigger different procedures. For example, the complaint alleges that the proper documentation would have "rendered plaintiff's ticket subject to acceptance by each of the carriers before a seat would be confirmed." To that extent, it is possible that Etihad may have handled plaintiff differently with respect to the concededly rushed decision to let him on as a last minute passenger. It is also reasonable to infer that proper documentation and additional time to process it may have obviated misunderstandings arising from interactions with individual airline representatives in Frankfurt.

Finally, the issue of whether the causal connection is severed by Lufthansa and Etihad's interactions with plaintiff "will turn upon whether this sequence of events was a normal and foreseeable consequence of the situation created" by United's alleged negligence. Derdiarian, 51 N.Y.2d at 315. Again, we do not comment on the strength of plaintiff's argument, but it is not entirely unreasonable, and we reiterate that it is a question ill-suited for the 12(b)(6) stage.

United also argues that plaintiff waived any negligence claim by virtue of agreeing to United's airline tariff. The provisions mandate that the passenger is solely responsible for being

---

[3] Even accepting United's failure to warn argument, we would be unable to decide on a motion to dismiss. Carriers rely on this type of information to be delivered in a predictable, conspicuous form in the PNR, raising a question as to "the extent of [Etihad's] knowledge," which cannot be determined as a matter of law. Lichtenstein v. Fantastic Merchandise Corp., 860 N.Y.S.2d 462, 465 (2007) (quoting Liriano, 700 N.E.2d at 308).

aware of and complying with the relevant laws and regulations of foreign jurisdictions encountered in course of transportation, and make clear that a carrier is not liable for any damage arising from the failure of a passenger to comply with any laws and government regulations. See United Reply Mem. at 7-8.

For several reasons, we cannot rely on United's tariff at this point in the litigation. First, as we noted in our March 28, 2012 order, it is not clear at this stage whose tariffs applied. Hunter, 863 F.Supp.2d at 211. Second, the other airlines' liability is not predicated on their failure to proactively inform plaintiff of relevant foreign laws. As we noted in our previous opinion, liability in this case is based on the failure to provide accurate information once a passenger affirmatively inquires. Id. at 209-10. Furthermore, United's liability stems from the improper documentation of plaintiff's weapons. We cannot say as a matter of law that this break from procedure did not create a risk of harm that resulted in an apparent misunderstanding in Frankfurt. This is particularly true with respect to Etihad, who decided to accept plaintiff as a last minute passenger.

Accordingly, United's motion to dismiss Etihad's contribution claim is denied.

### 2. Indemnity

Finally, we grant United's motion to dismiss Etihad's meritless indemnity claim. Where a party seeking to recover against other tortfeasors is at fault, New York relegates such a party to the remedy of contribution. Amusement Industry, Inc. v. Stern, 693 F.Supp.2d 319 (S.D.N.Y., 2010) (citing Monaghan v. SZS 33 Associates, L.P., 73 F.Supp. 126 (2d Cir. 1996)). United's liability in this case would not completely relieve Etihad from its own liability.

18

## III.   CONCLUSION

For all of the foregoing reasons, we grant United's motion to dismiss plaintiff's claims. We also grant United's motion to dismiss Etihad's indemnity claim, but deny its motion to dismiss the contribution claim.

SO ORDERED.

Dated:  Brooklyn, New York
        February 26, 2013

/s/ Judge Raymond J. Dearie
_____
RAYMOND J. DEARIE
United States District Judge